**DUMAS & VAUGHN, LLC**
ASHLEY L. VAUGHN, OSB No. 114691
E-mail: ashley@dumasandvaughn.com
1000 SW Broadway, Suite 2150
Portland, OR 97205
Phone: 503-616-5007

**SALI ROBB LLC**
KEVIN SALI, OSB No. 044065
Email: kevin@salirobb.com
JOHN ROBB, OSB No. 104910
E-mail: john@salirobb.com
1000 SW Broadway, Suite 2150
Portland, OR 97205
Phone: 971-407-3371

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JANE DOE, an individual proceeding under pseudonym,<br><br>Plaintiff,<br><br>v.<br><br>MULTNOMAH COUNTY, a political subdivision of the State of Oregon; MARTIN J. JACKSON, an individual; STEVEN ALEXANDER, an individual; CHAD GAIDOS, an individual; DENISE DIAMOND, an individual; JEFFREY WHEELER, an individual; and JOHN DOES 1-10 individuals.<br><br>Defendants. | Case No. 3:26-cv-00323<br><br>**COMPLAINT**<br><br>**Civil Rights Violations (42 U.S.C. § 1983); Negligence; Sexual Battery**<br><br>**JURY TRIAL DEMANDED** |

/ / /

Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over Plaintiff's claims for violations of federal constitutional rights pursuant to 28 U.S.C. § 1331 and 1343 because the claims arise under 42 U.S.C. § 1983, and this Court has pendent jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because all of the events or omissions giving rise to Plaintiff's claims occurred in the District of Oregon and because Defendants are subject to personal jurisdiction in the District of Oregon.

## PARTIES

3. Plaintiff Jane Doe is an individual, and is, and at all relevant times was, a resident of Oregon. She is proceeding under a pseudonym to protect her privacy and due to fear of retaliation and harassment.[1]

4. Defendant Multnomah County is an Oregon county. Multnomah County operates a jail, known as the Multnomah County Detention Center ("MCDC"). Multnomah County has a duty to provide for the health and safety of all persons incarcerated at MCDC.

5. Defendant Martin Jackson ("Defendant Jackson") is, and at all relevant times was, employed by Defendant Multnomah County as a corrections deputy at MCDC with the Multnomah County Sheriff's Office ("MCSO"). All conduct alleged below occurred within the scope of his employment for Multnomah County under color of state law. He is sued in his individual capacity.

---

[1] Defendants are not prejudiced by Plaintiff's use of a pseudonym because Plaintiff's counsel will provide Plaintiff's full name and identifying information to Defendants, promptly following the filing of this lawsuit, so as not to impede their right and ability to investigate and defend against Plaintiff's allegations.

Page 1 -    **COMPLAINT**

6.      Defendant Steven Alexander ("Defendant Alexander") was at all relevant times employed by Defendant Multnomah County as a Chief Deputy of Corrections for the MCSO. All conduct alleged below occurred within the scope of his employment for Multnomah County under color of state law. He is sued in his individual capacity.

7.      Defendant Chad Gaidos ("Defendant Gaidos") was at all relevant times employed by Defendant Multnomah County as a Chief Deputy of Corrections for MCSO. All conduct alleged below occurred within the scope of his employment for Multnomah County under color of state law. He is sued in his individual capacity.

8.      Defendant Denise Diamond ("Defendant Diamond") was at all relevant times employed by Defendant Multnomah County as the Prison Rape Elimination Act ("PREA") Compliance Manager for MCSO. All conduct alleged below occurred within the scope of her employment for Multnomah County under color of state law. She is sued in her individual capacity.

9.      Defendant Jeffrey Wheeler ("Defendant Wheeler") was at all relevant times employed by Defendant Multnomah County as a Facility Commander for MCDC. All conduct alleged below occurred within the scope of his employment for Multnomah County under color of state law. He is sued in his individual capacity.

10.     Defendant Alexander, Defendant Gaidos, Defendant Diamond, and Defendant Wheeler are referred to together below as "Supervisor Defendants." Defendant Jackson, Defendant Alexander, Defendant Gaidos, Defendant Diamond, Defendant Wheeler, and John Does 1-10 are referred to below as "Individual Defendants."

11.     Defendants John Does 1-10 are unknown individuals employed by Defendant Multnomah County who were employed at MCDC during the relevant time period and who knew or should have known of risks that Defendant Jackson posed to female detainees at MCDC. All

conduct alleged below occurred within the scope of their employment for Defendant Multnomah County. They are sued in their individual capacities.

## DEFENDANT JACKSON'S ABUSE OF PLAINTIFF

12. Plaintiff Jane Doe was detained at MCDC in or around February 16, 2020 pending trial on charges arising from her alleged theft of a van and injury of an employee at a tow yard.

13. Plaintiff was 25 years old at the time. She was in active recovery from heavy substance abuse, which contributed to her criminal charges, and had been homeless prior to her arrest. She was young and vulnerable.

14. While incarcerated at MCDC, Plaintiff met Defendant Jackson, who was a corrections deputy assigned to the female unit. On information and belief, he had been employed by Defendant Multnomah County as a corrections deputy since at least 2014. On information and belief, Defendant Jackson was approximately 35 years old.

15. At all relevant times, Defendant Jackson was employed by Defendant Multnomah County as a corrections deputy tasked with the health, safety, and care of female detainees at MCDC. Defendant Jackson was in a position of authority, power, and trust over female detainees, whose day-to-day livelihood and safety depended on the decisions and actions of the corrections deputies.

16. Defendant Jackson took advantage of Plaintiff's vulnerable state to initiate a sexual relationship with her within a month of her entering custody. In exchange for her performing sexual acts with or for Defendant Jackson, he gave her gifts—such as items from the commissary, and extra blankets and clothes—and special treatment, such as releasing her early from her cell.

17. Plaintiff initially felt that she could not rebuff Defendant Jackson's sexual advances and feared retaliation by Jackson if she did so.

18.     Sexual conduct continued between Plaintiff and Defendant Jackson through in or around July of 2021, when Plaintiff was released from MCDC. At one point during the summer of 2020, they were engaging in sexual conduct three to four times per week.

19.     Due to his position of power over and manipulation of Plaintiff, Plaintiff was confused and felt indebted to Defendant Jackson; she feared what he could do to her if she ended the conduct. Eventually, Defendant Jackson led Plaintiff to believe that he was in love with her and wanted to start a life together when she was released from custody; unbeknownst to Claimant, he was married with children. At the time, Plaintiff did not view their relationship as abusive or harmful.

20.     Defendant Jackson gave Plaintiff his personal contact information, including his personal mobile phone number, to contact him when she was released from custody.

21.     On information and belief, at least one other inmate and Plaintiff's boyfriend at the time reported Jackson's conduct, and a PREA investigation commenced. However, Plaintiff denied the sexual conduct, and on information and belief, Defendant Multnomah County terminated the PREA investigation. On information and belief, and unbeknownst to Plaintiff at the time, Defendants also received additional reports at the time regarding Defendant Jackson's inappropriate behavior with Plaintiff.

22.     Based on the reports by at least two witnesses, Defendant Multnomah County, through its employees with MCDC and Supervisor Defendants, knew or had sufficient information indicating a substantial likelihood that Defendant Jackson was having illegal sexual contact with Plaintiff to which Plaintiff could not legally consent because of her status as a detainee.

23.     As Defendant Jackson invited and expected, Plaintiff contacted him via phone when she was released from custody.

24.     Plaintiff and Defendant Jackson have since remained in intermittent contact by social media and phone, including exchanging messages and other internet content that is sexual in nature. The last incidents of physical contact occurred while Plaintiff was in custody, prior to July of 2021.

25.     By staying in contact with Plaintiff through on our about late 2025, Defendant Jackson maintained his exploitation and manipulation over her almost to the present day. Plaintiff was on probation until May 25, 2025 and became terrified of ceasing communication with Defendant Jackson for fear that he would retaliate against her and interfere with her successful completion of probation, after years of hard work and recovery on her part.

26.     In late 2025, after she successfully completed probation and faced no further criminal charges, Plaintiff formally reported Defendant Jackson to MCSO, who resumed its prior investigation into Jackson's conduct. At the time of the filing of this Complaint, Defendant Jackson is under investigation by MCSO and is on administrative leave relating to these allegations.

27.     Defendant Multnomah County retained the right to control the means and methods used by Defendant Jackson, and it was while exercising these duties and authority on behalf of Defendant Multnomah County that Jackson abused Plaintiff.

28.     As a direct and proximate result of Defendants' tortious conduct, Plaintiff Jane Doe suffered in the past, continues to suffer, and will suffer in the future psychological injuries, including but not limited to pain and suffering and emotional distress. These injuries caused and will continue to cause Jane Doe noneconomic damages an amount to be determined by a jury.

## SUPERVISORY LIABILITY

29.     Supervisor Defendants were employed by Defendant Multnomah County at the time that Defendant Jackson abused Plaintiff.

30. Supervisor Defendants were entrusted with the safety, care, and protection of inmates while detained at MCDC.

31. Supervisor Defendants were further charged with implementing PREA procedures, designed to prevent abuses such as those alleged here, including to thoroughly investigate all PREA complaints.

32. Additionally, upon information and belief, surveillance cameras were not installed in the female unit at MCDC until some point during Plaintiff's period of incarceration. The lack of video cameras created an ideal condition for staff to engage in sexual conduct with inmates.

33. Defendant Jackson took advantage of the lack of and/or insufficient video cameras to purposely engage in sexual conduct with Plaintiff in areas unmonitored by video surveillance.

34. Supervisor Defendants were responsible for fostering a safe environment and should have realized that the lack of video cameras in or around the female unit created a significant safety concern, for both staff and inmates.

35. Supervisor Defendants were aware of Defendant Jackson's contact with Plaintiff, as well as, on information and belief, prior reports of sexual conduct between female inmates and corrections deputies. They failed in their respective supervisory roles to prevent the further abuse of Plaintiff, including by:

    a. Failing to investigate properly or at all the reports of sexual conduct between Defendant Jackson and Plaintiff and/or other female inmates;

    b. Failing to have sufficient security and monitoring equipment, such as video surveillance cameras, at MCDC to deter such abuses;

    c. Failing to properly implement, monitor, and sustain PREA standards;

  d. Failing to adequately supervise Defendant Jackson's interactions with Plaintiff and other female inmates;

  e. Failing to have sufficient abuse reporting practices in place to allow inmates to confidently and safely report abuses by corrections deputies, without fear of retaliation; and

  f. Facilitating a general culture in which coercive sexual conduct between corrections deputies and female inmates proliferated and was even joked about among staff and inmates.

 36. A supervisor exercising a reasonable amount of care would have recognized the predatory threat that Defendant Jackson represented to Plaintiff and other similarly situated female inmates.

 37. Through the actions or inactions alleged in paragraph 35, Supervisor Defendants consciously disregarded credible information regarding Defendant Jackson abusing Plaintiff as well as conditions that allowed Defendant Jackson to abuse Plaintiff. Their behavior evinced a deliberate indifference to Plaintiff's rights to be free from pretrial punishment and coerced sexual conduct.

## REALIZATION OF HARM

 38. Defendant Jackson engaged in a pattern of conduct with Plaintiff known as "grooming," where he gained the trust of Plaintiff and led her to believe that their relationship was mutually beneficial, supportive, and non-coercive.

 39. Defendant Jackson's grooming of Plaintiff included:

  a. Showing Plaintiff favoritism and special treatment;

  b. Finding excuses to spend time alone with Plaintiff;

  c. Isolating Plaintiff from other trusted individuals and encouraging her to lie about their relationship;

      d.      Eroding physical boundaries with Plaintiff;

      e.      Giving gifts and special treatment to Plaintiff in violation of MCDC rules and regulations; and

      f.      Manipulating his position as a staff member to emotionally identify with Plaintiff.

40. Due to Defendant Jackson's grooming tactics, and Plaintiff's vulnerability and naivete, Plaintiff was not immediately aware of the coercive and abusive nature of their "relationship."

41. Plaintiff only recently began to recognize Defendant Jackson's conduct as abusive and even more recently began to realize that his manipulation and abuse injured her.

42. Less than two years before the filing of this complaint, Plaintiff discovered the causal connection between her abuse, her resulting injuries distinct from the abuse itself, and the responsibility of Defendants in causing those injuries. Plaintiff did not discover (and could not reasonably have discovered) at an earlier time the causal connection between the abuse and the damages suffered because of the abuse, particularly because, as described above, Plaintiff did not understand at the time of the coerced sexual conduct that it was abusive. Further, even if she had some understanding at the time that the conduct was prohibited, Plaintiff was effectively prevented from reporting due to fear of punishment, recrimination, harassment, and/or retaliation by Defendant Jackson and/or MCDC leadership.

43. Additionally, due to Defendant Jackson's conduct, Plaintiff believed that she and Defendant Jackson were in a mutually beneficial, loving relationship that would continue when she was released from custody; her delusions, fostered by Defendant Jackson's manipulation and exploitation of her vulnerability, prevented her from recognizing the abusive nature of their "relationship."

44.     Finally, Plaintiff did not and could not reasonably have discovered (and still has yet to fully discover) the extent of Defendants' prior knowledge of Defendant Jackson's inappropriate conduct, as well as Defendants' responsibility for Plaintiffs' abuse.  There is likely still additional evidence bearing on Defendants' liability and notice of Defendant Jackson's inappropriate conduct that Plaintiff has not and could not have reasonably discovered prior to the exchange of discovery in this lawsuit.

## OREGON TORT CLAIMS NOTICE

45.     Plaintiff sent a Tort Claims Notice pursuant to ORS 30.275 on November 13, 2025, acknowledgement of which was received by Plaintiff's counsel on November 19, 2025. Plaintiff's Tort Claim Notice was timely based on the facts alleged above.

## FIRST CLAIM FOR RELIEF:
## 42 U.S.C. §1983 – 14th Amendment Violation
### *Against all Individual Defendants*

### Count I:
### Pretrial Punishment

46.     Plaintiff realleges and incorporates by reference paragraphs 1-45.

47.     At all relevant times, Defendant Multnomah County employed Individual Defendants with MCDC and/or MCSO.

48.     All Individual Defendants were acting under color of state law when they engaged in the alleged wrongful conduct.

49.     Plaintiff was a pretrial detainee at MCDC at the time Defendant Jackson engaged in coercive sexual conduct with her.

50.     As a pretrial detainee, Plaintiff had a right under the Fourteenth Amendment to the United States Constitution to be free from pretrial punishment.

51.     Defendant Jackson may have initially acted out of a desire to fulfill his responsibilities as a Corrections Deputy for Defendant Multnomah County but eventually

engaged in the coercive sexual conduct with Plaintiff with no legitimate penological or government justification or objective.

52. Defendant Jackson acted, at least in part, for his own sexual gratification.

53. Defendant Jackson's coercive sexual conduct with Plaintiff caused her harm outside the inherent discomforts of confinement.

54. Through the failures and policies alleged above at paragraph 35, Supervisor Defendants created the conditions at MCDC under which Defendant Jackson's coercive sexual conduct with Plaintiff was possible.

55. Individual Defendants' conduct constituted a substantial departure from professional judgment, practice, or standards.

56. Those conditions put Plaintiff at substantial risk of suffering serious harm, namely, the risk that Plaintiff would be sexually abused by Defendant Jackson.

57. Individual Defendants evinced deliberate indifference to Plaintiff's right to be free from pretrial punishment.

58. As a direct and foreseeable result of Individual Defendants' tortious conduct, Plaintiff suffered the injuries and incurred the damages described above.

59. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover reasonable and necessary attorney fees and costs incurred in the prosecution of this action.

## Count II:
## Failure to Protect and Supervise

60. Plaintiff realleges and incorporates by reference paragraphs 1-59.

61. At all relevant times, Defendant Multnomah County employed Individual Defendants with MCDC and/or MCSO.

62. All Individual Defendants were acting under color of state law when they engaged in the alleged wrongful conduct.

63. Plaintiff had rights to bodily integrity and privacy under the Fourteenth Amendment to the United States Constitution.

64. Through the failures and policies alleged above at paragraphs 35, Supervisor Defendants failed in their duties to protect and supervise Plaintiff, and to provide for her reasonable safety while detained. Their conduct created the conditions at MCDC under which Defendant Jackson's coercive sexual contact with Plaintiff was possible.

65. Their conduct constituted a substantial departure from professional judgment, practice, or standards.

66. Those conditions put Plaintiff at substantial risk of suffering serious harm, namely, the risk that Plaintiff would be sexually abused by Defendant Jackson.

67. Individual Defendants evinced deliberate indifference to Plaintiff's right to be free from invasions of bodily integrity and privacy.

68. As a direct and foreseeable result of Individual Defendants' tortious conduct, Plaintiff suffered the injuries and incurred the damages described above.

69. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover reasonable and necessary attorney fees and costs incurred in the prosecution of this action.

### SECOND CLAIM FOR RELIEF:
### 42 U.S.C. §1983 – 14th Amendment Violation
### *Monell* Claim

#### *Against Defendant Multnomah County*

70. Plaintiff realleges and incorporates by reference paragraphs 1-69.

71. On information and belief, at all relevant times, Defendant Multnomah County had the following policies, customs, and/or practices, that resulted in Plaintiff's harm:

   a. Insufficient investigations into reports alleging sexual conduct between staff and inmates;

      b.      Terminating investigations into reports alleging sexual conduct between staff and inmates, if the alleged inmate involved denied the contact;

      c.      Insufficient security and monitoring equipment, such as video surveillance cameras, in the female unit of MCDC;

      d.      Improper or insufficient implementation, monitoring, and sustaining of PREA standards;

      e.      Prohibition of one-on-one interactions between deputies and inmates in areas unmonitored by video surveillance;

      f.      Inadequate supervision of corrections deputies' one-on-one interactions with inmates, including in locations unmonitored by video surveillance;

      g.      Insufficient abuse reporting practices in place to allow inmates to confidently and safely report abuses by corrections deputies without fear of retaliation;

      h.      Insufficient training of staff members in how to recognize, report, and respond to reports of and witnessing of inappropriate sexual conduct between deputies and inmates; and

      i.      Facilitating a general culture in which coercive sexual conduct between corrections deputies and female inmates proliferated and was even joked about among staff and inmates.

72.    Defendant Multnomah County's policies posed a substantial risk of causing and did cause substantial harm to Plaintiff and other female inmates similarly situated.

73.    Defendant Multnomah County was aware of and deliberately disregarded that risk.

74.    As a direct and foreseeable result of Defendants' tortious conduct, Plaintiff

Page 12 -  **COMPLAINT**

suffered the injuries and incurred the damages described above.

75. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover reasonable and necessary attorney fees and costs incurred in the prosecution of this action.

### THIRD CLAIM FOR RELIEF:
### Negligence
### (Oregon State Law)

*Against Defendant Multnomah County*

76. Plaintiff realleges and incorporates by reference paragraphs 1-75.

77. By taking custody of Plaintiff while she awaited trial, Defendant Multnomah County entered a special relationship with Plaintiff and, as such, owed Plaintiff a heightened duty of care to provide for a safe environment and protect her from injury while in Defendant Multnomah County's custody and care.

78. Additionally or alternatively, Defendant Multnomah County created a foreseeable risk that Plaintiff and female detainees like Plaintiff would suffer the type of harm that Plaintiff eventually suffered by unreasonably acting or failing to act in one or more of the following ways:

   a. Failing to investigate properly or at all the reports of sexual contact and/or inappropriate sexual conduct between Defendant Jackson and Plaintiff and/or other female inmates;

   b. Failing to have sufficient security and monitoring equipment, such as video cameras, at MCDC to deter such abuses;

   c. Failing to properly implement, monitor, and sustain PREA standards;

   d. Failing to adequately supervise Defendant Jackson's interactions with Plaintiff and other female inmates;

  e. Failing to prohibit one-on-one interactions between deputies and inmates in areas unmonitored by video surveillance;

  f. Failing to properly supervise deputies' one-one-one interactions with inmates;

  g. Failing to have sufficient abuse reporting practices in place to allow inmates to confidently and safely report abuses by corrections deputies without fear of retaliation;

  h. Failing to train staff members in how to recognize, report, and respond to reports of and witnessing of inappropriate sexual conduct between deputies and inmates; and

  i. Failing to redress a general culture in which sexual conduct between corrections deputies and female inmates proliferated and was even joked about among staff and inmates.

79. Plaintiff had a legally protected interest in being free from sexual abuse by deputies in charge of her safety and wellbeing.

80. Based on Defendants' knowledge of Defendant Jackson's inappropriate conduct, as alleged above, Defendant Multnomah County allowed or permitted Jackson's abuse of Plaintiff. Further, as discussed above, Plaintiff did not and reasonably could not have discovered the causal connection between the abuse and her injuries until less than five years before filing suit.

81. As a direct and foreseeable result of Defendant Multnomah County's negligence, Plaintiff suffered the injuries and incurred the damages described above.

/ / /

/ / /

/ / /

Page 14 - **COMPLAINT**

## FOURTH CLAIM FOR RELIEF:
### Sexual Battery
### (Oregon State Law)

*Against Defendant Jackson*

82. Plaintiff realleges and incorporates by reference paragraphs 1-81.

83. While acting in the course and scope of his agency for Defendant Multnomah County, Defendant Jackson engaged in a harmful or offensive touching of Plaintiff to which Plaintiff could not legally consent due to her status as a detainee over which Defendant Multnomah County maintained legal and physical custody, as alleged above.

84. As a direct result and consequence of Defendant Jackson's sexual battery, Plaintiff suffered the injuries and incurred the damages alleged above.

## FIFTH CLAIM FOR RELIEF:
### Sexual Battery-Vicarious Liability
### (Oregon State Law)

*Against Defendant Multnomah County*

85. Plaintiff realleges and incorporates by reference paragraphs 1-84.

86. While acting in the course and scope of his agency for Defendant Multnomah County, Defendant Jackson engaged in a harmful or offensive touching of Plaintiff to which Plaintiff could not legally consent due to her status as a detainee over which Defendant Multnomah County maintained legal and physical custody, as alleged above.

87. Defendant Jackson performed his responsibilities as a corrections deputy and formed a relationship with Plaintiff initially out of a desire to fulfill his duties for Defendant Multnomah County. The actions he took as a corrections deputy led directly to and resulted in his sexual abuse of Plaintiff.

88. As a direct result and consequence of Defendant Multnomah County's wrongful conduct, Plaintiff suffered the injuries and incurred the damages alleged above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jane Doe prays for judgment against Defendants, and each of them, as follows:

1. If successful on any of Plaintiff's claims for relief, noneconomic damages for Plaintiff in an amount to be determined by a jury at trial;

2. If successful on Plaintiff's First and/or Second Claims for Relief, attorneys fees incurred, as allowed under 42 U.S.C. § 1988;

3. Plaintiff's disbursements and incurred costs; and

4. Any other relief this Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a jury trial.

DATED this 18th day of February, 2026.

          */s/ Ashley L. Vaughn*
          Ashley L. Vaughn, OSB No. 114691
          **DUMAS & VAUGHN, LLC**

          John Robb, OSB No. 104910
          Kevin Sali, OSB No. 044065
          **SALI ROBB LLC**

          *Attorneys for Plaintiff*